**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
----------------------------------------------------------------X

RENEE YOUNG and ROXANE TIERNEY,
Individually and on behalf of all others similarly
situated,

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:_5/20/2021_

                              Plaintiffs,

          -against-

L'ORÉAL, INC.,

                              Defendant.

----------------------------------------------------------------X

**21-CV-0446 (GHW) (KHP)**

**REPORT & RECOMMENDATION**
**ON DEFENDANT'S MOTION TO**
**DISMISS**

**TO:    HON. GREGORY H. WOODS, United States District Judge**
**FROM: KATHARINE H. PARKER, United States Magistrate Judge**

          Plaintiffs Renee Young and Roxane Tierney ("Plaintiffs") filed this putative class action

against Defendant L'Oréal, Inc. ("L'Oréal") on February 7, 2020 in the United States District

Court for the Northern District of California alleging six causes of action all focused on L'Oréal's

failure to disclose on their packaging and labels for four cosmetic products that the products'

pump dispensers do not dispense a large percentage of the product.  Plaintiffs bring claims

under various California consumer protection statutes and pursuant to related common law

doctrines including:  (1) California's Consumer Legal Remedies Act, Civ. Code §§ 1750, *et seq*.

("CCLRA"); (2) California's Unfair Competition Law Bus. & Prof. Code §§ 17200, *et seq*. ("CUCL");

(2) California's Song-Beverly Consumer Warranty Act, Civ. Code §§ 1790 *et seq*. ("S-B CWA"); (4)

breach of implied warranty of merchantability; and (5) unjust enrichment.  They also assert a

claim for declaratory relief.  L'Oréal moved to transfer the case to this District pursuant to the

first-to-file rule in light of the nearly identical case filed here, encaptioned *Critcher v. L'Oréal*, 1:18-cv-05639 (JGK)(KHP), which was granted by the District Court in California.

L'Oréal now moves to dismiss the First Amended Complaint ("FAC") on grounds that this action is preempted by federal law and, alternatively, for failure to state a plausible claim under Fed. R. Civ. P. 12(b)(6). L'Oréal relies primarily on the Second Circuit's decision in *Critcher*, which affirmed the trial court's dismissal of nearly identical claims finding they were preempted by the Food, Drug, and Cosmetic Act ("FDCA"), 21 USC § 362. *Critcher v. L'Oréal USA, Inc.*, 959 F.3d 31 (2d Cir. 2020). L'Oréal also relies on the alternative grounds for dismissal articulated by the trial court in *Critcher* but not addressed by the Circuit; that is, that the claims also are preempted by the Fair Packaging and Labeling Act ("FPLA"), 15 U.S.C. §§ 1453, 1459, and otherwise failed to state a plausible claim for relief.

For the reasons that follow, I recommend that L'Oréal's motion to dismiss be GRANTED in its entirety.

### FACTUAL ALLEGATIONS[1]

The FAC alleges that L'Oréal engaged in deceptive marketing practices by virtue of failing to inform consumers that the pump dispensers on certain products failed to dispense significant, material amounts of the product. (FAC ¶¶ 2, 6-7) The four products at issue are the Visible Lift Serum, Age Perfect Eye Cream, SuperStay Foundation, and RevitaLift Moisturizer— all viscous creams/cosmetics. (FAC ¶¶ 26-28.) Plaintiffs acknowledge that all four products' quantity labels "accurately state the total amount of product contained therein." (FAC ¶ 6.)

---

[1] The statement of facts is taken from the allegations in the Complaint and those documents incorporated by reference and are assumed true for purposes of the Court's consideration of this motion.

But, because the dispenser does not dispense all of the product in the bottles, they contend the quantity label is misleading by omission.

Plaintiffs are two California residents, both over the age of 18, who between them, purchased three of the four products mentioned in the FAC that are manufactured, packaged, labelled, and sold by Defendant L'Oréal. (FAC ¶¶ 18-19.) Plaintiff Young purchased the Age Perfect Eye Cream and the Visible Lift Serum at stores in Windsor, California and was unable to use all of the product because the pumps did not fully dispense the product and she was unable to otherwise access the non-dispensed amounts using reasonable means. (FAC ¶¶ 41-42.) Plaintiff Tierney purchased the Visible Lift Serum and Superstay Foundation in Apple Valley, California and also was unable to use all of the product because the pump did not fully dispense the contents and she was unable to otherwise access the non-dispensed amounts using reasonable means. (FAC ¶¶ 47-78.) Neither Plaintiff ever purchased the RevitaLift Moisturizer and neither specifies how much of the products they purchased was inaccessible. Both Plaintiffs allege that had they known prior to purchase that they would be unable to access all of the product, they would not have purchased those cosmetics. (FAC ¶ 50.) Neither Plaintiff purchased the products again after their disappointing experiences. (FAC ¶¶ 43, 49.)

Plaintiffs assert there have been many consumer complaints about the faulty dispenser for these four products, all complaining that they could not access the full amount of product through the dispenser and that it was difficult to pry off the tops to access the remainder of the product. They quote a number of these complaints, which are posted on the internet. (FAC ¶¶ 30-32.) Relatedly, Plaintiffs allege that L'Oréal's customer service hotline employees, who regularly received complaints related to these four products' pumps impeding access to the full

amount of product, were "trained to feign ignorance" and to designate such complaints under the broad category of "dispenser" and the subcategory of "tube too short." (FAC ¶ 33.) Plaintiffs' counsel also cite to results of a national consumer survey of more than 750 individuals that they conducted showing that "74% [of consumers] expected to receive and use the full labeled amount on the bottle." (FAC ¶¶ 38-39.) Finally, Plaintiffs' counsel assert that testing they commissioned regarding the "dispensing rates" of the four products found that, depending on the product, anywhere from 19% to 56% of the product was left behind and not dispensed by the pump. (FAC ¶ 36-37.) They contend that other pump options used for other products do a better job at dispensing similar products.

## LEGAL STANDARD ON A MOTION TO DISMISS

Under Federal Rule of Civil Procedure 12(b)(6), the Court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *See, e.g.*, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam); *Littlejohn v. City of New York*, 795 F.3d 297, 306-07 (2d Cir. 2015). To survive a motion to dismiss, the complaint must contain "sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). While detailed factual allegations are not required, the complaint must contain more than mere "labels and conclusions" or a "formulaic recitation of the elements of a cause of action . . . ." *Id.* (cleaned up). "[N]aked assertions devoid of further factual enhancement" are insufficient to survive a motion to dismiss. *Id.* (cleaned up). The "plausibility standard" asks for "more than a sheer possibility that a defendant has acted unlawfully." *Id.*

4

The Court may consider not only the complaint, but also "other documents related to plaintiff's claim, even if they are not attached to the complaint, so long as those filings are either incorporated by reference or are integral to and solely relied upon by the complaint." *Littlejohn*, 795 F.3d at 305 n.3 (cleaned up).

## DISCUSSION

### A. Federal Regime for Labelling of Cosmetics

Congress passed the FDCA, 21 U.S.C. § 301 *et seq.,* in an effort "to protect consumers from fraud and misrepresentations in the sale of food, drugs, and cosmetics." *Critcher v. L'Oréal USA Inc.*, No. 18-cv-5639 (JGK), 2019 WL 3066394, at *3 (S.D.N.Y. July 11, 2019) (quoting *O'Connor v. Henkel Corp.*, No. 14-cv-5547, 2015 WL 5922183, at *3 (E.D.N.Y. Sept. 22, 2015)), *aff'd*, 395 F.3d 31 (2d Cir. 2020). In doing so, Congress intended to create a national and uniform regulatory scheme for cosmetics, among other items, which up until the FDCA's passage, had been subject to the disparate laws of the states. *Critcher v. L'Oréal USA Inc.*, 959 F.3d 31, 35 (citing S. Comm. on Commerce, S. REP. NO. 75-91, 5S. REP. NO. 75-91, 5 (1937)). Section 362(a) of the FDCA deems any covered product to be "misbranded" if the "labeling is *false or misleading* in any particular." 21 U.S.C. § 362(a) (emphasis added). The United States Food and Drug Administration ("FDA") has promulgated regulations to enforce and effectuate the FDCA. 21 U.S.C. § 371(a). As relevant here, the FDCA regulations require that the "label of a cosmetic in package form shall bear a declaration of the net quantity of contents." 21 C.F.R. § 701.13(a). The FDCA contains an expansive and explicit preemption provision designed to prevent state laws from obstructing the FDCA's comprehensive regulatory scheme. *See*

*Critcher*, 959 F.3d at 35; *see also* Food and Drug Admin. Modernization Act of 1997, Pub. L. No. 105-115, § 752, 111 Stat. 2296, 2376.  This preemption provision provides:

> [N]o State or political subdivision of a State may establish or continue in effect any requirement for labeling or packaging of a cosmetic that is different from or in addition to, or that is otherwise not identical with, a requirement specifically applicable to a particular cosmetic or class of cosmetics under this chapter, the Poison Prevention Packaging Act of 1970 (15 U.S.C. § 1471 *et seq*.), or the Fair Packaging and Labeling Act (15 U.S.C. § 1451 *et seq*.).

21 U.S.C. § 379s(a).

The FPLA, 15 U.S.C. § 1451 *et seq.,* also regulates various consumer product packaging, including cosmetics packaging.  It requires that the "net quantity of contents [be] separately and accurately stated."  15 U.S.C. § 1453(a)(2).  Like the FDCA, the FPLA contains an unambiguous preemption provision that "express[es] [the] intent of Congress to supersede" state law to the extent that any such laws regarding the packaging of cosmetics are "less stringent than or require information different from" the FPLA and its regulations.  15 U.S.C. § 1461; *see also Critcher*, 2019 WL 3066394 at *3.

Plaintiffs acknowledge that both the FDCA and FPLA apply to the L'Oréal products at issue and that L'Oréal has complied with these laws and their implementing regulations.  However, Plaintiffs argue that under California law, more must be disclosed to consumers on the packaging/labels of these products to avoid deceiving consumers about the quantity of cosmetics they can extract from the containers via the dispenser pump rather than by prying off the tops and accessing the products by some other way (e.g., a finger or a cotton swab).

## B.  The *Critcher* Litigation

The claims and theory of liability in this case are virtually identical to those made in *Critcher*, and Plaintiffs in both cases are represented by the same attorneys.  The only difference is that the *Critcher* plaintiffs alleged violations of New York, Kansas, Florida, Missouri, Texas and Nevada, whereas the claims in this case are brought under California law.  1:18-cv-5639 (JFK)(KHP).  Also, the factual allegations are nearly identical and involve the same L'Oréal products.  Indeed, in connection with its decision transferring this case to this District, the California District Court noted that the complaints in both actions are "almost word for word the same."  (ECF No. 45 at p. 9.)

On July 11, 2019, the Hon. John G. Koeltl dismissed the *Critcher* action on three grounds.  First, Judge Koeltl held that the FDCA preempted the plaintiffs' claims, rejecting plaintiffs' argument that they simply sought to use state law to enforce the FDCA's rule that a cosmetic label will be considered misbranded if it is "false or misleading in any particular*."  Critcher v. L'Oréal USA Inc*., 18-cv-5639, 2019 WL 3066394, *3 (S.D.N.Y. July 11, 2019).  Judge Koeltl found that the focus of the claims concerned the labeling of L'Oréal's products; that is, plaintiffs sought to add to or supplement the labeling specified by federal law.  *Id*. at *3.  He reasoned that the broad prohibition on misleading labels did not override the more specific labeling requirements prescribing inclusion of net weight on cosmetics labels, with which L'Oréal fully complied.  *Id*. at *4.  Because any state law that seeks to impose requirements not identical to the FDCA are preempted, Judge Koeltl dismissed the action as preempted by the FDCA.  *Id*. at *4; 21 U.S.C. § 343-1.

Second, Judge Koeltl also held that the plaintiffs' claims were separately preempted by the FPLA for much the same reasons. Just like the FDCA's preemption provision, the FPLA explicitly supersedes state law and bars states from imposing laws that "require information different from" the FPLA's requirements. *Id.* Because the plaintiffs sought to impose requirements on L'Oréal's labels that were different from what the FPLA required, he held the claims were preempted by the FPLA.

Finally, Judge Koeltl ruled that even if the plaintiffs' suit was not preempted by federal law, L'Oréal nonetheless was entitled to dismissal because the plaintiffs did not plausibly plead that a reasonable consumer would have been deceived by L'Oréal's alleged omission about the failure of the dispenser pumps to dispense all of the product. His rationale was that a reasonable consumer, behaving reasonably, is aware that a product that contains viscous substances being dispensed through pumps—which "proliferate the market for cosmetics"—will not be able to "dispense all of the cosmetic." *Id.* at *5. And, the reasonable consumer also is aware of other products outside of the cosmetics industry that are viscous such as "soaps, shampoos, conditioners, toothpastes, lotions, sunscreen, hair gels, ointments, and other cosmetics" that similarly are not fully dispensed by their dispensers. *Id.* Therefore, he held that plaintiffs' subjective disappointment with the unreachable creams/cosmetics in L'Oréal's containers did not result in illegal deception or "transform [L'Oréal's] accurate labeling of the product's net weight into fraud by omission." *Id.* (quoting *Hillen v. Blistex, Inc.*, No. 17-cv-2074, 2017 WL 2868997, at *3 (N.D. Ill. July 5, 2017)).

As noted above, the Second Circuit affirmed dismissal of the *Critcher* case based on FDCA preemption, declining to address the alternative grounds for dismissal cited by Judge

Koeltl.  *See Critcher v. L'Oréal USA, Inc.*, 959 F.3d 31 (2d Cir. 2020).  The Second Circuit's

reasoning is explained with the following passage from its decision:

> As already noted, the FDA has promulgated rules regulating what must be
> included on labels. The regulations have therefore stated, with specificity,
> what information is necessary to avoid misleading consumers—such as,
> the net quantity of the product in a container. In light of the technical
> nature of such requirements—combined with Congress's broad,
> categorical statement of preemption in the FDCA—we are reluctant to
> conclude that states may impose other labeling requirements that have
> not been imposed by Congress or the FDA. If we were to impose such
> additional labeling requirements, we would be construing state law to
> impose many "requirements" that are not contained in the federal statute,
> or in the regulations issued thereunder, and to disrupt what Congress
> intended to be a uniform—and federally-led—regulatory scheme.

*Id.* at 38.

### C. Does the FDCA Preempt Plaintiffs' Suit?

Plaintiffs seek to avoid the holding in *Critcher* – that their claims are preempted by the

FDCA by citing the Ninth Circuit's decision in *Ebner,* 838 F.3d 958 (9th Cir. 2016).  *Ebner* involved

a lip balm dispenser that left lip balm behind.  By virtue of the supposedly faulty dispenser, the

plaintiffs argued the labeling and packaging for the lip balm indicating the net weight of its

contents was misleading by omission (the failure to include supplemental information about

product accessibility on the label).  They also argued that the oversized tubes and box

packaging created the misleading impression that there was a larger quantity of lip balm than

actually provided.  Based on these facts, the plaintiffs asserted claims under California's False

Advertising Law, its Consumers Legal Remedies Act, and its Unfair Competition Law, as well as a

claim for unjust enrichment.  The district court granted the defendant's motion to dismiss,

finding the label-based claims preempted by the FDCA and that the plaintiffs otherwise failed to

state a claim with respect to the remaining design and packaging claims.  *Ebner v. Fresh Inc.,*

No. SACV 13-00477 JVS, 2013 WL 9760035 (C.D. Cal. Sept. 11, 2013).  The Ninth Circuit affirmed

dismissal based on failure to state a claim, but not on preemption.  *Ebner v. Fresh, Inc.,* 818 F.3d

799, 807 (9th Cir.), *withdrawn and superseded on denial of reh'g en banc*, 838 F.3d 958 (9th Cir.

2016). Neither the District Court nor the Circuit addressed preemption under the FPLA.

Plaintiffs urge this Court to adopt the Ninth Circuit's rationale with respect to FDCA

preemption.  But this Court is bound by Second Circuit law and follows *Critcher*.  To the extent

Plaintiffs argue that *Critcher* can be distinguished because it did not concern California law as

this case does, their argument is unpersuasive.  In *Ebner*, the Ninth Circuit relied on the general

requirements of the FDCA and California's Sherman Law that both prohibit false and misleading

labeling of cosmetics, finding that both laws were consistent in their requirements in this

regard. *Ebner v. Fresh, Inc.,* 838 F.3d 958, 965 (9th Cir. 2016). Based on this consistent

prohibition, the Ninth Circuit reasoned that plaintiffs' request for a supplemental statement on

the label or package was in accordance with the FDCA to the extent such a statement were

required to ensure the label and packaging were not misleading and thus not preempted by the

FDCA.[2]  *Id.* at 964-965.

But, the FDCA has more specific provisions expressly regulating net quantity labeling.  21

C.F.R. § 701.13(a).  Those more specific provisions require a finding of preemption and govern

here. *Critcher*, 2019 WL 3066394, at *4.   That is because any state law that would require

---

[2] The court in *Ebner* cited to the FDCA safe harbor regulation permitting supplemental statements other than the principal display panel(s) describing in nondeceptive terms the net quantity of the contents as support for its holding.  *Ebner*, 838 F.3d at 964 (citing 21 C.F.R. § 701.13(q)).  This Court does not read this safe harbor regulation to override the expansive and explicit preemption language in the statutory text of the FDCA.  *See* 21 U.S.C. § 379s. Rather, this provision gives individual companies the option to add non-deceptive statements to their labels—it does not give states license to require supplemental statements. *See also O'Connor v. Henkel*, 14-cv-5547, 2015 WL 5922183, at *5 (E.D.N.Y. Sept. 22, 2015) (that federal law permits supplemental statements has no bearing on preemption; focus of preemption inquiry on what federal law requires).

labeling that is not identical with the FDCA's requirements is expressly preempted, 21 U.S.C. § 379s; *Critcher*, 2019 WL 3066394, at *3, aff'd, 959 F.3d at 36, and what Plaintiffs contend is required by California law are supplemental statements on the Defendant's labels/packaging.

As the Second Circuit recognized, if Plaintiffs were permitted to move forward with their claims, "they would be using state law to impose labeling requirements on top of those already mandated in the FDCA and the regulations promulgated thereunder." *Critcher,* 959 F.3d 31 at 36. In other words, the practical effect of allowing the claims to proceed would contravene Congress' desire to preempt any state requirement on labeling that was not identical to the requirements of federal law. *Id.* at 36-37. *See also Turek v. Gen. Mills, Inc.,* 662 F.3d 423, 427 (7th Cir. 2011) ("Even if the disclaimers that the plaintiff wants added would be consistent with the requirements imposed by the Food, Drug, and Cosmetic Act, consistency is not the test; identity is. Maybe such disclaimers would be a good thing (an issue on which we take no position) and the FDA should require them, but that is irrelevant to this appeal."). *Critcher*'s rationale applies regardless of the text of any state statute or common law doctrine if the remedy sought would be additive to the labeling requirements set forth in the FDCA. Because that is precisely what Plaintiffs seek under California law, their claims are preempted by the FDCA.[3] *See Critcher*, 959 F.3d at 38.

---

[3] While Plaintiffs do mention a pump defect regularly throughout the FAC, it is done so in the context of bemoaning the lack of labelling to make customers aware that the pump will not dispense the entirety of the cosmetic. They do not plead a separate product defect liability theory. Thus, the Court need not engage in a preemption analysis in that regard.

### D. Does the FPLA also Preempt Plaintiffs Suit?

The FPLA, like the FDCA, contains an express preemption provision that is unequivocal on congressional intent—the touchstone of preemption analysis. *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 485 (1996). It states that "it is the *express intent of Congress* to supersede any and all laws of the States . . . for the labeling of the net quantity of contents" for covered commodities "which are less stringent than or require information different from" FPLA § 1453 and its regulations. 15 U.S.C. § 1461 (emphasis added). Plaintiffs' entire suit is based on L'Oréal's failure to add language to its packaging about the net quantity of product that would be dispensed by the pump, which is a quantity less than the net quantity within the bottle. Given that the FPLA expressly regulates labeling and packaging and does not require net dispensable quantity, any California law that would require something different is preempted. One can only imagine the myriad disclaimers and information that might need to be added to labels and packaging if the Court were to accept Plaintiff's argument, resulting in an end run around Congress' intent to comprehensively regulate cosmetics labeling through the FDCA and FPLA. *Critcher*, 959 F.3d at 34.

Plaintiffs' argument that this Court should ignore the FPLA and look only to the FDCA does not assist them in avoiding preemption because, as discussed above, the FDCA also preempts Plaintiffs' claims. Further, while it is true that the FPLA's savings provision states that it is not intended to "repeal, invalidate, or supersede," *inter alia*, the FDCA, 15 U.S.C. § 1460, this provision does not cancel the express language of the FPLA preempting state law that would require something different than the net weight requirement set forth in the FPLA.

Plaintiffs' argument would render the FPLA a nullity as to cosmetics—a result not supported by any authority cited by Plaintiffs.

Accordingly, the FPLA provides a ground separate and apart from the FDCA to find that Plaintiffs' claims are preempted. *Critcher*, 2019 WL 3066394, at *3-4  (FPLA preempted state law claims seeking supplemental statement about net dispensed amount of cosmetic); *O'Connor v. Henkel Corp*., 14-cv-5547, 2015 WL 5922183 (E.D.N.Y. Sept. 22, 2015) (FPLA preempted state law claim that would have required supplemental statements on deodorant labels/packaging regarding net content).

### E.  If Not Preempted, Have Plaintiffs' Pleaded a Plausible Theory of Liability?

L'Oréal argues in the alternative that if the claims are not preempted, they nonetheless should be dismissed because Plaintiffs have failed to plausibly state a claim upon which relief can be granted.  *See* Fed. R. Civ. P. 12(b)(6).  L'Oréal first argues that the claims are barred by California's safe harbor doctrine, which protects a party against liability for conduct that is authorized or required by law.  *See Ebner*, 838 F.3d at 963 (defining the doctrine); *see also Jones v. Rath Packing Co.*, 430 U.S. 519, 537-38 (1977) ("[U]nder the FPLA, as under the FDCA, a manufacturer of food is not subject to enforcement action for violation of the net-weight labeling requirements if the label accurately states the net weight.").  This doctrine, however, does not apply to an allegation that material information has been omitted from a product's label or packaging, rendering its label or packaging misleading.  *Ebner*, 838 F.3d at 964.

Turning to whether Plaintiffs have plausibly pleaded violations of the various California consumer protection statutes and common law referenced in the complaint, the court looks to whether, taking the facts pleaded as true, a reasonable consumer would be deceived by

L'Oréal's products.  *See Ebner*, 838 F.3d at 966-68 (applying reasonable consumer standard to plaintiffs' CLRA, UCL, Sherman Law, and unjust enrichment claims); *Forouzesh v. Starbucks Corp.*, No. 16-cv-3830 (PA) (AGRX), 2016 WL 4443203, at *11-12 (C.D. Cal. Aug. 19, 2016) (applying the standard to express and implied warranty claims); *In re Arris Cable Modem Consumer Litig.*, 327 F.R.D. 334, 360 (N.D. Cal. 2018) (applying the standard to Song-Bervely, UCL, and CLRA claims).To meet this standard, a plaintiff must show that "a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled."  *Ebner*, 838 F.3d at 965.

The Ninth Circuit in *Ebner* held that the plaintiff's label claim failed under state law, finding that the reasonable consumer understands the mechanics of lip balm dispenser tubes, including that some product might be left behind in the tube and not dispensed.  *Ebner*, 838 F.3d at 965-966.  It also reasoned that a rational consumer can plainly see whether additional product is left behind in the tube and "decide whether it is worth the effort to extract any remaining product with a finger or a small tool."  *Id.* at 966.   The court also noted that there was no deceptive act to be dispelled insofar as the weight label and packaging complied with state and federal law and did not contradict any other representations or inferences on the lip balm packaging.  *Id.* at 966-67.

Judge Koeltl's decision in *Critcher* is in accord with *Ebner* on this point.  Judge Koeltl fully discussed and analyzed the reasonable consumer standard, stating:

> A reasonable consumer would know that a container that dispenses a viscous cosmetic through a pump will not dispense all of the cosmetic. Consumers are generally aware that they will not be able to extract every bit of product from such containers.  This awareness is grounded both in common knowledge of pump dispensers and consumer familiarity with viscous substances like soaps, shampoos, conditioners, toothpastes,

> lotions, sunscreen, hair gels, ointments, and other cosmetics and personal
> care products that a reasonable consumer would know to be viscous.

*See Critcher*, 2019 WL 3066394 at *4-5.  For this reason, he held that plaintiffs had not plausibly

alleged that a reasonable consumer would be deceived and dismissed the case.  *See also Hillen*

*v. Blistex, Inc.*, No. 17-cv-2074, 2017 WL 2868997, at *3 (N.D. Ill. July 5, 2017) ("Indeed, as other

courts have observed, consumers are generally aware that they may not be able to extract

every bit of common products such as 'toothpaste, peanut butter, shampoo, and many other

products' from their packaging.").

The allegations in this case are nearly identical to the allegations in *Critcher*.[4]  Just as in

this case, the Plaintiffs in *Critcher* relied on independent lab testing and consumer survey

results allegations to support their claims of deception, but the Court nonetheless found that

Plaintiffs' allegations were insufficient to raise a plausible claim.   While it is true that well-

pleaded allegations regarding testing or survey data, even when challenged as to methodology

and reliability, are ordinarily accepted as true at the pleading stage, they may not be sufficient

to withstand a motion to dismiss if they are irrelevant or do not support a plausible claim of

deceit.  *See Naimi v. Starbucks Corp.*, 798 F. App'x 67, 69 (9th Cir. 2019) ("Plaintiffs were not

required to allege additional details concerning the contents and reliability of the survey in

order for the allegations concerning the survey's results to be credited as true at the motion-to-

---

[4] While Plaintiffs do discuss the Second Circuit's holding in *Critcher*, Plaintiffs incorrectly assume that the Second Circuit's choice to affirm Judge Koeltl's dismissal of the complaint in *Critcher* only on FDCA preemption grounds, and not on FPLA preemption or implausibility grounds, negatively impacts the controlling weight or persuasiveness of Judge Koeltl's opinion.  This is not correct.  Rather, the Second Circuit affirmed only on FDCA preemption grounds because it may affirm a decision if it agrees with any of the unrelated bases upon which the lower court ruled.  The Second Circuit's decision to rule on narrower grounds than the District Court does not therefore detract from the analysis, findings, or holding in Judge Koeltl's opinion.

dismiss stage."); *Shalikar v. Asahi Beer U.S.A., Inc.*, 2017 WL 9362139, at *7 (C.D. Cal. Oct. 16, 2017) ("[T]he Court must presume [survey data as] truth on a motion to dismiss, even if a defendant has raised colorable arguments as to the reliability of the survey methodology."); *Pichardo v. Only What You Need, Inc.*, No. 20-cv-493 (VEC), 2020 WL 6323775, at *6 (S.D.N.Y. Oct. 27, 2020) (noting the conclusory and inconsistent nature of survey results regarding customer expectations of the percent of vanilla used in vanilla flavored drinks); *Becerra v. Dr. Pepper/Seven Up, Inc.*, No. 17-cv-05921 (WHO), 2018 WL 3995832, at *6-7 (N.D. Cal. Aug. 21, 2018) (in a case involving whether "Diet" on Diet Dr. Pepper labels were misleading, the court discredited survey allegations for failing to "challenge the view that reasonable consumers believe 'diet' soft drinks offer relatively fewer calories or fat compared to regular soft drinks. Without alleging facts that can counteract this health claim, consumer expectations that 'diet' soft drinks will help them lose or maintain weight simply reinforce that reasonable consumers believe diet soft drinks can lead to weight loss or maintaining weight relative to regular soft drinks."); *Podpeskar v. Dannon Co.*, No. 16-cv-8478 (KBF), 2017 WL 6001845, at *2, *4 (S.D.N.Y. Dec. 3, 2017) (rejecting survey results as improperly conclusory).

Here, the survey results, even when accepted as true, do not establish relevant consumer expectations for the four L'Oréal products at issue. For example, the survey told respondents to assume the product was a "liquid cosmetic" with a "closed pump container" for "liquid foundations," and then asked whether the respondents expected to receive and use the full labelled amount of the product. (FAC ¶ 38.) However, the products at issue are viscous products--a cream, a moisturizer, a foundation and a serum. Further, there is no indication that the individuals surveyed were informed about the look of the containers, whether the

containers could be opened and product removed by another method than the pump, or whether consumers could see undispensed product in the container.[5]  The generalized survey questions do not, therefore, render it plausible that the reasonable consumer was deceived by the L'Oréal products at issue here.  *See Becerra*, 2018 WL 3995832, at *6-7 (survey results did not "counteract" the health claims plaintiffs alleged to be misleading, and as such, were insufficient to establish that a reasonable consumer would be misled by the term "diet").  Similarly, the lab results state what the court accepts as true – that a certain amount of the product was not dispensed by the pump dispenser.   This alone does not render a claim of deceit plausible, because, as the holdings in *Ebner* and *Critcher* recognized, it is obvious to most consumers that they generally will not be able to extract every bit of viscous cosmetic product from such containers.  See *Ebner*, 838 F.3d at 965-66 ("[a]lthough the consumer may not know precisely how much product remains, the consumer's knowledge that some additional product lies below the tube's opening is sufficient to dispel any deception."); *Critcher*, 2019 WL 3066394, *5 (finding omission of additional information about amount dispensed does not establish deception or "transform defendant's accurate labeling of the product's net weight into fraud by omission").

   To the extent Plaintiffs include allegations about consumer complaints in their pleading, these allegations similarly do not render the claim of deceit by omission plausible.  *See, e.g*, *Catalano v. BMW of N. Am., LLC*, 167 F. Supp. 3d 540, 559-60 (S.D.N.Y. 2016) (complaint failed

---

[5] In this case, Plaintiffs concede that the tops of the bottles could be removed, albeit with some effort, and the remaining product accessed. (*See, e.g.*, FAC ¶¶ 31.a ("finish my things til [sic] the last drop . . . extremely hard to remove the pump); 31.c ("consistently having to wrench off the pump at the 25% level and dig out the remainder"); 31.d ("If you want to actually use all the product [], you have to pry the top off")..)

to adequately plead fraudulent concealment given heighted pleading standards of Rule 9(b) and absence of allegations regarding non-generalized motivations or opportunity to commit fraud); *Berenblat v. Apple*, Inc., No. 08-cv-4969 (JF) (PVT), 2010 WL 1460297, at *9 (N.D. Cal. Apr. 9, 2010) (complaints posted to Apple's website insufficient to establish Apple's knowledge of a defect for purposes of UCL despite allegation that Apple deleted a complaint thread on its website containing over 350 posts).  Indeed the public complaints about the amount of product dispensed by the pump dispenser—which Defendant apparently left up on its website for many years—undercut any claim of concealment by Defendant.

When comparing the claims in this case to those dismissed in *Critcher*, this Court identified only one set of unique allegations—that L'Oréal's customer service hotline received daily calls regarding the dispensing issues with pumps and that there were certain issue designations these hotline operators were directed to make regarding the pumps.  (*See* FAC ¶ 33.)  Plaintiffs allege that the hotline operators were instructed to "feign ignorance" of pump issues when receiving such complaints, yet, at the same time, Plaintiffs allege the operators labelled such complaints as "tube too short" under the broader issue tag of "dispenser."  *Id.* This allegation is an insufficient differentiator between this case and *Critcher* to allow this case to withstand dismissal, because it does not tend to render the claim of deception plausible; it merely shows that some customers were unhappy with the dispenser – not that they were deceived or that Defendant intended to deceive.  Likewise, failing to respond to customer complaints and use a different dispenser does not equal deceptive practices.  Thus, the only unique allegation contained in the FAC as compared to the complaint in *Critcher* does not change the outcome of the plausibility analysis.

In sum, each court to have considered an accesbile-net-weight theory has rejected it in light of the implausibility that a reasonable consumer would be deceived by accurately displayed net weights and the absence of a statement about the dispensable net weight.   They recognized that consumers can see on the packaging the type of dispenser used and, based on their experience with similar products, are aware that pump dispensers generally do not dispense 100% of the product.  Cosmetic products like the serum, moisturizer, cream and foundation come in myriad packaging including squeeze tubes, pump dispensers, jars, and compacts.  Most cosmetic buyers have purchased products in all of these different kinds of containers and are fully familiar with the pros and cons of the different packaging and dispenser mechanisms and may even factor in the type of dispenser in their buying decisions in addition to the quality of the underlying cosmetic. Customers who purchase the L'Oréal products at issue can plainly see from the packaging the type of dispenser used for the products and understand that if they want to extract every last drop of product, they will need to take off the top and use a tool or a finder to get it all.  Thus, it is not plausible that they are deceived about what they are getting, absent some unspecified disclaimer about how the pump functions.  Moreover, Plaintiffs concede that consumers can actually open the bottles, albeit with some effort, and utilize all the product.  Thus, there is no question that consumers are actually getting the full amount of product listed on the label.   Therefore, the complaint should be dismissed on the alternative ground of failure to state a claim.

**F.  Additional Bases for Dismissal**

Although Plaintiffs' statutory and common law warranty claims are guided by the same reasonable consumer standard discussed above, see *Forouzesh v. Starbucks Corp.*, No. 16-cv-

3830 (PA) (AGRx), 2016 U.S. Dist. LEXIS 111701, at *11-12 (C.D. Cal. Aug. 19, 2016), the

warranty claims also are insufficiently pleaded on the grounds that California law "does not

impose a general requirement that goods precisely fulfill the expectation of the buyer. Instead,

it provides for a minimum level of quality." *Elias v. Hewlett-Packard Co.*, 903 F. Supp. 2d 843,

851-52 (N.D. Cal. 2012). "The core test of merchantability is fitness for the ordinary purpose for

which such goods are used." *Mexia v. Rinker Boat Co.*, 95 Cal. Rptr. 3d 285, 289 (Ct. App. 2009).

Under the California Song-Berkeley Act, a consumer good satisfies this warranty if the products:

"(1) Pass without objection in the trade under the contract description; (2) Are fit for the

ordinary purposes for which such goods are used; (3) Are adequately contained, packaged, and

labeled; and (4) Conform to the promises or affirmations of fact made on the container or

label." Cal. Civ. Code § 1791.1. The FAC does not contain plausible allegations, that L'Oréal's

products are unsafe and do not work as intended, that L'Oréal made a promise or affirmation

that is untrue, or that the products contain considerable defects. To the contrary, the FAC is

rife with admissions of the efficacy of the cosmetics themselves. Thus, there is no breach of the

implied warranty of merchantability. Further, Plaintiffs have effectively abandoned their

argument that there was an express warranty of merchantability between L'Oréal and Plaintiffs

because, despite a single citation to Cal. Civ. Code § 1791.2, Plaintiffs did not respond to

L'Oréal's argument in its papers that no express warranty exists.

Similarly, Plaintiffs' claim for unjust enrichment cannot stand in the absence of some

plausibly pleaded cognizable injury. *See Berenblat v. Apple*, Inc., No. 08-cv-4969 (JF) (PVT),

2010 WL 1460297, at *10 (N.D. Cal. Apr. 7, 2010) ("Because it concludes that Plaintiffs still have

failed to state a cognizable claim with respect to their other claims for relief, the Court again

will dismiss their claim for unjust enrichment.").  This is because unjust enrichment is not a

cause of action under California law, but rather, a principle underlying certain doctrines and a

potential remedy.  *See Jogani v. Superior Court,* 81 Cal. Rptr. 3d 503, 511 (Ct. App. 2008).  Given

that there is no plausible theory of injury, L'Oréal is entitled to dismissal of the unjust

enrichment claim.

Finally, with respect to Plaintiffs' claim for declaratory judgment, Courts in the Second

Circuit regularly hold that there is no Article III standing to maintain a suit seeking injunctive

relief in a consumer protection/deception case when plaintiffs plead that they will not buy the

product in the future because the plaintiffs are now fully aware of the alleged deception.  *See,*

*e.g.*, *Kommer v. Bayer Consumer Health*, 710 Fed. App'x 43 (2d Cir. 2018) (no standing to enjoin

sales practices of Dr. Scholl's inserts where plaintiff concedes he is aware of the alleged

deception and unlikely to purchase the product again); *In re Amla Litig.*, No. 16-cv-6593 (JSR),

2018 U.S. Dist. LEXIS 128987 at *32-34 (S.D.N.Y. July 31, 2018) (citing *Kommer* to reverse earlier

finding of standing); *Davis v. Hain Celestial Grp., Inc.*, No. 17-cv-5191 (ARR), 2018 U.S. Dist.

LEXIS 56794 at *20-21 (E.D.N.Y. Apr. 3, 2018) (if "plaintiff was deceived by defendants'

products, he is now aware of the truth and will not be harmed again in the same way"); *but see*

*Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 970-71 (9th Cir. 2018) (holding consumer

adequately alleged "imminent or actual threat of future harm," and thus had standing,

although it was "a close question," because the complaint's allegations were consistent with an

intent to repurchase and devoid of grounds to discount the presumed-to-be-true desire to

repurchase).

Plaintiffs concede that they will not purchase L'Oréal's product again. As such, Plaintiffs' do not have standing to pursue injunctive relief. (*See* FAC ¶¶ 46, 49, 50.) L'Oréal is entitled to dismissal of the injunctive and declaratory relief claim under Federal Rule of Civil Procedure 12(b)(1) for this reason as well.

## **CONCLUSION**

For the reasons set forth above, I recommend that L'Oréal's motion to dismiss be GRANTED in its entirety and the claims dismissed with prejudice.


DATED:     New York, New York
           May 20, 2021                          Respectfully,



                                                 _____
                                                 KATHARINE H. PARKER
                                                 United States Magistrate Judge

## <u>NOTICE</u>

The Defendant shall have fourteen days from the service of this Report and Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure. *See also* Fed. R. Civ. P. 6(a), (d) (adding three additional days only when service is made under Fed. R. Civ. P. 5(b)(2)(C) (mail), (D) (leaving with the clerk), or (F) (other means consented to by the parties)). Plaintiffs shall have fourteen days from the service of this Report and Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure.

If Plaintiffs file written objections to this Report and Recommendation, the Defendant may respond to Plaintiffs' objections within fourteen days after being served with a copy. Fed. R. Civ. P. 72(b)(2). Alternatively, if Defendant files written objections, Plaintiffs may respond to such objections within fourteen days after being served with a copy. Fed. R. Civ. P. 72(b)(2); *see also* Fed. R. Civ. P. 6(a), (d). Such objections shall be filed with the Clerk of the Court, with courtesy copies delivered to the chambers of the Honorable Gregory H. Woods at the United States Courthouse, 500 Pearl Street, New York, New York 10007, and to any opposing parties. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b). Any requests for an extension of time for filing objections must be addressed to Judge Woods. The failure to file these timely objections will result in a waiver of those objections for purposes of appeal. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b); *Thomas v. Arn*, 474 U.S. 140 (1985).